May it please the court. The first stage in a statutory analysis begins with the language of the statute. And the statute before the court is the United States Census and Guidelines section 2L1.2. 2L1.2 states that if a defendant previously was deported after a felony conviction for which a drug trafficking offense in which the sentence imposed exceeded 13 months impose a 16 level enhancement. Do we have a circuit split on this thing already? We do your honor. Isn't the Sentencing Commission scheduled to resolve it I think in November of this year? The Sentencing Commission has resolved it, your honor. The Sentencing Commission has proposed an amendment that would clarify this guideline. It's proposed an amendment, but is it firmly in place yet? It's my understanding it is, your honor. The other side looks quizzical. We'll find out what they think. Yes, your honor. My sense of this whole thing is we ought to allow the Sentencing Commission to fix it and then follow the Sentencing Commission. What am I missing? Well, your honor, the Sentencing Commission will fix the matter prospective but not retroactive. Mr. Catalan was sentenced just recently and would not have the benefit of the Sentencing Guidelines when the amendment goes into effect. Why wouldn't he? You may be right, but why wouldn't he? He's pending on appeal now, so ordinarily we give retroactive effect to people whose issues are pending on appeal. The fact of the matter, your honor, that this matter is before this circuit. This circuit has not spoken. Mr. Catalan has raised the issue and we are presently before the court. Well, if you're right, he's not going to get off. If you're right, you get the benefit of what you say should be the case. He won't be getting out until the end of this year anyway, will he? Your honor, it's my understanding that Mr. Catalan may be eligible for immediate relief if the court were to rule in his favor. Well, that's eligible. Your honor, if the court were to rule in Mr. Catalan's favor, then the matter, hopefully the matter would be remanded and Mr. Catalan would be re-sentenced. A re-sentence pursuant to the clear agreement that was entered into by the party would amount almost to time served right about this time right now. You know, my mind is sort of running. We've got circuits going in different directions. This stuff usually ends up in the Supreme Court if the commission doesn't straighten it out. Well, your honor, the Census Commission has spoken. The Census Commission has spoken. There is a proposed amendment which will go into effect. Has not gone into effect. Goes into effect in November. That is correct. That's what I mean. It's not in place yet. It's not in place just yet in order for Mr. Catalan to receive some relief. I would think that this court should speak on the matter. Again, your honor, when we look at Are you saying it's a clarifying amendment or a substantive change? It's a clarifying amendment, your honor. There is no substantive change whatsoever. So why wouldn't that have a retroactive effect? It would. Your honor, it's my understanding that the commission declined to address any retrospective aspect with respect to No, I understand that. I'm just saying as a matter of usual course, why wouldn't a clarifying amendment have retroactive effect on a case pending an appeal? Your honor, I don't know the answer to that. The fact of the matter is that we are before this court to determine whether or not the district court No, I understand that, but I echo Judge Trott's sentiments as that we can spend a lot of our time chasing our tails around the circuits, already a circuit split on this issue when there's an answer potentially out there that resolves it. I mean, even if we were to rule in your favor, it goes back to the district court. You have to go through resentencing. That's going to take a bit of time. If we rule against you, you're in a tough spot. I am indeed, but the fact of the matter is that we are here. Yes. We are here. No, we know our responsibilities, counsel. I'm just saying. Yes, your honor. In analyzing the statute here, the plain language of the statute indicates that there are two things that have to happen before the 16th level. How come you've got circuits going the other way? It's plain, your honor, for, it's plain for this court to see that. They didn't think it was plain, right? It's a matter of. Maybe they thought it was plain the other way. It's plain in purpose of this argument for the court. When the court consider the circuits, how the circuits have dealt with the issues, that's the Fifth, the Seventh, the Eleventh, and recently the Tenth Circuit basically stating that you count. Right. But that's the Tenth Circuit's over Judge Gorsuch's dissent too. That is correct. That is correct, your honor. But when you look at the circuits that are going the other way, it's only one circuit. And that circuit. Second. That circuit is the Second Circuit. Your honor, I think the relevant time period involved here is the date of deportation. And when you look at the statute, the operative word in the statute is the word after, which means that there must be one thing that happens first and a second thing that happens next. And the first thing that has to happen. You can read it the other way. You say that the conviction has to be, it has to be after conviction. It doesn't necessarily mean you have to have served all the time. The conviction has to happen first, your honor. Right. The conviction and the sentence. After you have a conviction for a trafficking offense. Yeah. I mean, that's the issue. The modifying phrase also applies to the sentence. Everybody agrees it has to be after conviction, right? That the conviction has to happen first. The conviction has to happen first. The sentence has to happen first. You say that, but that's not clear. That is not inevitable. You could say the conviction has to happen first, but not the sentence. Well, your honor, when you have a word in the statute that says after, that means that something has to come before. The deportation has to come after a certain thing. And what must come first is the conviction, the sentence. And the sentence. Well, maybe a conviction is defined by the sentence. No, your honor. No? The conviction is not defined. I know you don't agree, but that's not implausible to me. The conviction is for a drug trafficking offense. There could be a variety of sentences for a drug trafficking offense. What makes the 16-level enhancement applicable here is that the sentence imposed should be greater than 13 months. And in this particular case, the sentence imposed at the time the defendant was deported was less than 13 months. It was 180 days. Now, the application notes to the guidelines basically says that, you know, the sentence imposed includes all sentences, including a sentence imposed after a revocation of supervised release. If that were the case, and that's how you calculate one's criminal history, that would contemplate two dates in which two sentences were imposed. In this particular case, the first sentence was imposed in 2007. The deportation occurred in 2007. There was another sentence which occurred in 2011. But it's attributed to the same conviction, right? Same condition. When you aggregate both sentences, you would come up with a sentence greater than 13 months. And in terms of calculating his criminal history, that second sentence would relate back to the first sentence. In determining the sentence imposed, it would also relate back to that initial conviction. But the guidelines specifically states that the first thing that has to happen is that the sentence imposed has to exceed 13 months. At the time of deportation, the sentence had not exceeded 13 months. At the time of deportation, the sentence was only 180 days. In the clarifying guidelines, in the substance of the guideline itself, it did not change one bit. It basically said the exact same thing as the guideline as it exists today. The only thing that has changed is in the application note, which is clarifying the guideline, it basically says pretty much the same thing, that the total sentence include any sentence imposed upon a violation of supervised release. But only if the revocation occurred prior to deportation. You're out of time. Thank you. We'll hear from the government. Good morning. Jean-Claude Andre on behalf of the United States. I guess I'll begin with Judge Trott and Judge Thomas' questions about what to do with the potentially forthcoming amendment. The amendment has been proposed by the Sentencing Commission. It still has to be accepted by Congress. That won't happen until November 1st. Certainly, if that amendment does take effect, it would be a clarifying amendment under Morgan and Christensen and Van Alsten. And so the defendant would get the benefit of it if this case is still alive on direct appeal. However, of course, we know that Congress does not always accept Sentencing Commission's proposed amendments. We saw time and again with the crack amendments that the Sentencing Commission was crying for that Congress didn't act. We saw in the child pornography guideline context that the Sentencing Commission was repeatedly proposing amendments, and Congress actually put its thumb on the scale and went the other way. So until November 1st, I think I agree with Mr. Eaglin that this Court should decide this case, decide it in the ordinary course. And if the decision comes down before November 1st, it comes down before November 1st, with one caveat, if I may. And that is if, when your honors go back into conference and you vote, and you decide that defendant has the better interpretive argument of the current guideline, the government has no objection to a quick decision and even forthwith issuance of the mandate to get defendant back for resentencing as quickly as possible. Mr. Eaglin is correct that if this Court were to reverse on the current guideline, his projected release date would be in two weeks, June 17th. And so in the interest of justice … Not at the end of the year. Well, it would be in February if the government prevails on its interpretation. But otherwise, it would be June 17th. So in the interest of justice, if the government's losing, then by all means get him back to district court as quickly as possible for Judge Nguyen, if she's sitting by designation, or another judge to resentence him. On the merits, do you think the Sentencing Commission, as an interpretive tool, is wrong? I do. And the Department opposed this proposed amendment and said that the Commission should go the other way. And I presume that the Sentencing Commission just either made a policy decision or counted up the circuits and went with the majority. They didn't, unlike in other amendments that are discussed in the Federal Register where the Sentencing Commission publicly discusses these things, there's not much interpretation of the prior language going on. No, they just talk about the circuits going in two directions, and they seem to choose as a policy matter. Right, right, exactly. So I know that Morgan and Christensen and Van Olsen are the law of the circuit. Perhaps the test applied in those cases is a little too quick and easy by just looking at whether the Sentencing Commission is choosing among a circuit split. Because here, I don't think you can read into the old guideline what the Sentencing Commission has done with the proposed new guideline. And I'd like to talk about the circuit split issue a little bit as well. You know, certainly on its face, the circuit split would appear to be lopsided against my interpretation. But when you actually look at the sense in both the Fifth Circuit and the Tenth Circuit, we're talking about seven to five if you're counting judges as opposed to three to one if you're counting. Well, I think we're more interested in the persuasiveness of the circuits rather than the number, I expect. Although, you know, certainly number makes a certain amount of difference. Oh, no, absolutely. I think, you know, truthfully, in terms of policy, you can make arguments both ways. And there's a plausible argument for statutory or the interpretation going both ways. No, I agree. And as far as persuasiveness, I do think Judge Gorsuch's dissent is the best explanation of how to interpret this guideline. You know, he seemed to track your grammatical diagram. Yes, or I drafted my diagram after reading his dissent. But, no, I mean, we kind of have a runaway train problem here with this guideline. You have the Fifth Circuit in Bustillos-Pena that came out first. And the only time they mention the word any in Application Note 1B7 is when they actually are block quoting the Application Note. And the Seventh Circuit generally puts a little more meat on the bones. But even then, they don't grapple with the word any in the Application Note in their decision in Lopez. And then the Tenth Circuit, despite Judge Gorsuch's dissent, doesn't do much either. They just say we're not persuaded by the use of the word any. And so, you know, in light of the authorities that we've cited where the Supreme Court and this Court time and again have said that any means without limitation, we don't think that the judges or the circuit majorities rejecting our position are persuasive. And we would urge the Court to follow Judge Gorsuch's dissent. As far as policy is concerned, of course, our position is that policy shouldn't even enter into this debate as far as interpreting the current text. But even then, the Department, when the Department responded to the Sentencing Commission's proposed amendments or offer up for comment, the Department made its own policy arguments. And we stand behind them. We believe we have the better ones. The key, I think, actually, is that you can have a defendant who receives, you know, let's say a 180-day sentence out of the box with no supervision to follow. And you can have a defendant who receives 180 days with supervision to follow and then is revoked. And certainly the sentencing court that imposes that additional supervisorial component views the second defendant as more culpable or as his offense as being more serious. And under the defendant's construction here, that second defendant would receive a windfall. And that seems antithetical to the comedy that federal courts regularly give state court sentences when looking at how to treat a prior in federal sentencing proceedings. I'm just curious, in your personal experience, you're a line prosecutor, right? I'm an appellate at USA, but I dabble in the trial courts. Are there many sentences that are not followed by supervised release? I myself have never imposed one that hasn't been followed by supervised release, but I'm just wondering. No, federally the You said, oh, you know, one that's followed and one that's not followed, it would be different. In the federal system, it certainly is the norm, the overwhelming norm to have supervision to follow. In the state system, it's a little less regular. There are, you know, particularly with respect to wobblers, state sentencing courts have a lot of discretion on whether to do I see. So this applies to state sentences as well. Oh, absolutely. And that's where the issue I had not focused on that. And that's where the issue comes up most frequently. And so you can imagine a situation where, you know, the state This was a federal sentence, though, right? No, this was a prior state sentence. It was a prior state sentence. But you can imagine a situation where the state sentencing court, what they call it is, you know, issuance of sentence suspended, ISS, as we see in the PSRs. And but they still impose probation and 180 days in jail. And then basically it's a test for the defendant to see how he does on supervision once he gets out of jail. And so in that situation, which happens all the time, the defendant would get a windfall of four levels off his guideline range if he comes back, commits another crime, and is violated and then has sentence imposed by the state court upon the revocation. Which also, I guess, goes to the argument that the Seventh Circuit made, which is that the past tense use of the words exceeded and imposed in the guideline somehow compelled the defendant's construction in this case. First of all, federal sentencing courts are always looking backwards in time when they're imposing a sentence. But moreover, if you have the suspended sentence from a state court, the sentence as a matter of law, and this court's written on this issue a lot in Bridgeforth and other cases that have followed it, the sentence is not actually imposed in the state system until the probation is revoked. And yet the guidelines say you still aggregate those sentences, certainly in the Chapter 4 context, and under our position in the Chapter 2 context as well. One other point that I think is salient, this application note, 1B7, actually expressly tethers its interpretation of the term sentence imposed to Chapter 4. And, of course, in Chapter 4, where you're looking at criminal history, you take the defendant as you see him in court that day. If he was revoked on probation or received an additional sentence the day before, that counts under Chapter 4. And yet in this application note, it says sentence imposed has the meaning given in 4B1.2a and application note 2 to that guideline. So there are all of these textual cues in the application note that, in the government's view, compels the conclusion that you aggregate the sentences regardless of when they occurred and that it doesn't have to happen before deportation. If the Court has no further questions. Thank you. Thanks. Thank you. Okay, cases are yours to answer in a minute. Next, the argument in In re Quis.
judges: Kozinski, Trott, Thomas